E-FILED
Friday, 18 September, 2009  02:03:03 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

FILED
SEP 18 2009
PAMELA E. ROBINSON, CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-10052 |
| | ) | |
| BRYCE SCOTT, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

On August 25, 2009, Defendant filed a Motion to Suppress All Statements (Doc. 32) made by him while in police custody after his arrest on July 10, 2008, for possession of marijuana as the outgrowth of the execution of a search warrant at his apartment known as 2971 W. Cannes, Apartment #3, Peoria, Illinois. The Government filed a Response (Doc. 36) to the motion which proceeded to evidentiary hearing on September 9, 2009. At the conclusion of the hearing and arguments of counsel, the Court directed counsel to brief the issue of custodial "interrogation" and its parameters which briefs have been submitted and considered by the Court. It is undisputed that while in custody, Defendant was spoken to on several occasions by police officers without having been given the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). The Government contends that *miranda* warnings were unnecessary since Defendant was never "interrogated" by the police but merely engaged in conversation in response to Defendant's unsolicited expressed desire to help out his brother, the codefendant Marvin Jackson, who had been arrested and charged with possession of heroin. Defendant contends that any and

all conversations with police officers, including those relating to his desire and efforts to help his brother, were the byproduct of police "interrogation" and should be suppressed since Defendant was not advised of his *Miranda* rights.

The evidentiary facts reveal that Defendant was arrested around 2:00 p.m. on July 10, 2008, and was first questioned at the police station around 3:15 p.m. At that time, Defendant's brother, Marvin Jackson, had begun cooperation and had disclosed to police the location of 100 grams of heroin hidden under a concrete pad in the back yard of the Defendant's residence on Cannes Street. The evidence adduced at the hearing indicates that the police initiated their interview with Defendant by advising him of Jackson's plight who had been charged with a Class I felony for possession and distribution of heroin. Defendant's response was to deny that the police had anything on him but that he would cooperate with them if they, in return, would help out his brother Jackson. The officers responded by asking what Defendant would do to help his brother, and Defendant replied that if his brother went free, he would order a couple hundred grams of heroin from his drug source in Chicago, Illinois. The officers indicated any deal would have to be approved by the State's Attorney and Defendant urged them to see what they could do and get back to him.

Approval was obtained from the State's Attorney for a deal to reduce Jackson's charge to a Class 4 felony making him eligible for Section 410 probation to be administered in Texas near his family, but conditioned upon obtaining an incriminating video statement from Jackson. Having decided to also charge Defendant with the heroin, Defendant was again approached by the police around 5:30 p.m. with the intent to question him about the heroin found in the backyard of the residence, and advise him of the Jackson deal approved by the State's Attorney.

The officers initiated contact with Defendant by advising him that he was under arrest for the heroin and handing him the standard *Miranda* rights form which he was asked to read and sign. Defendant apparently read but refused to sign the miranda rights form. The officers reminded Defendant of the Jackson deal that had been worked out at his request and told Defendant that if he did not want to help out his brother, they were done speaking to him. At that point, the officers went away for a period of approximately 20 minutes to allow Defendant to think things over. Upon resumption of the interview, Defendant began making telephone calls to his Chicago heroin source, a man named Charles George. Defendant also signed the Informant's Contract, a document setting forth an agreement to cooperate in making controlled buys for the police and the terms of the deal made to reduce Jackson's charge as consideration for Defendant's cooperation. Defendant eventually made contact with his Chicago source who Defendant said would not be coming to Peoria until the next day. At that point the interview was terminated to be resumed the next day, July 11th.

On the morning of July 11th, Defendant was again interviewed at the station and officers were told by Defendant that he no longer wanted to cooperate or make further phone calls which ended the interview. This was the last interview session with Defendant. Later that morning, Jackson was again interviewed and he agreed to telephone the Chicago heroin source pursuant to an Informant Contract he signed giving him the benefit of the deal previously approved by the State's Attorney. The telephone calls by Jackson led to the arrest of the Chicago heroin source when he came to the Cannes Street apartment with more than 100 grams of heroin in his possession.

The record does not reveal any statements made by Defendant except those

3

relating to a deal to help out his brother, Marvin Jackson, by arranging a buy with his Chicago source of heroin; and these are the statements and comments Defendant wishes to suppress for the *Miranda* violation and later statements made by his Chicago source who was arrested and gave a statement to police incriminating Defendant in the purchase and sale of heroin.

There is no denial that Defendant was never given his full *Miranda* warnings before or during any of the attempted interviews on July 10th. Whether or not *Miranda* warnings were necessary under the circumstances is the critical issue. At the point Defendant volunteered his desire to help out his brother Jackson, the officers had not asked any questions designed to incriminate Defendant or to evoke an incriminating response. Defendant had only been told that his brother had been arrested for possession of heroin. Defendant's expression of a desire to help his brother was a voluntary, unsolicited statement for which the *Miranda* warnings were unnecessary since there is no basis in the record to find that the police officers should have known that the statement of Defendant's brother's plight would evoke Defendant's response. However, one can speculate whether or not Defendant would have volunteered this desire to help out his brother had he been first given his *Miranda* warnings. The Court is inclined to hold that whenever a person in custody, charged with a crime, is questioned, he should first be advised of his *Miranda* warnings before the beginning of any questions, no matter how innocuous the question. This bright-line rule would help assure Fifth Amendment protection to a person in police custody and eliminate uncertainty on the part of law enforcement as to when *Miranda* warnings are necessary. Unfortunately, however, this is not the law. The parties have not cited nor has the Court's research revealed any case law establishing this bright-line rule. Not all statements obtained by the police after a

person has been taken into custody are to be considered the product of interrogation. As noted in <u>Miranda</u>:

> Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without *300 any compelling influences is, of course, admissible in evidence. The *fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated.* . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today. *Id.,* at 478, 86 S.Ct., at 1630 (emphasis added).

In one of its earliest cases applying and explaining *Miranda*, the Supreme Court defined "interrogation." See *Rhode Island v. Innis*, 446 U.S. 291 (1980).

> [8][9][10][11][12][13][14] We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express *301 questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response **1690 [FN5] from the suspect. [FN6] . . . But, since the police surely *302 cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.[FN8]

The Government argues that the officers who conducted the various interviews with Defendant did not interrogate him within the meaning of *Miranda*, that they did not ask any questions of Defendant designed to elicit or that they should have known were reasonably likely to elicit an incriminating response. Rather the Government argues that Defendant volunteered remarks concerning his desire to help his brother and all related statements arising out of his telephone calls to his drug source in Chicago fall outside the scope of *Miranda*. The Court agrees with the Government. Defendant volunteered statements concerning his desire to help out

5

his brother and all subsequent contact between him and the police officers related to efforts by the police officers to accommodate Defendant's wishes in that regard. Under those circumstances, Defendant was never interrogated within the meaning of *Miranda* and the failure of the police to give him the *Miranda* warnings is not violative of Defendant's rights under *Miranda*. Therefore, for the foregoing reasons, the Motion to Suppress (Doc. 32) is denied.

Assuming *arguendo* that Defendant was subjected to interrogation within the meaning of *Miranda*, the *Miranda* warnings should have been given but were not. Therefore, all of Defendant's statements during the various interviews should be suppressed, including those relating to his contacts with the Chicago heroin source. However, the arrest of the Chicago heroin source and his related post arrest statements to the police that incriminate Defendant are not subject to suppression for any violation of Defendant's *Miranda* rights. The cooperative activity of Jackson was an independent basis for the appearance of the Chicago source at the residence to deliver heroin to Defendant. The doctrine known as "fruit of the poisonous tree" does not apply under the circumstances of this case to capture and suppress statements by the Chicago heroin source because of the failure of the Government to give Defendant his *Miranda* warnings during the July 10th interviews.

ENTERED this 18 day of September, 2009.

s/Joe B. McDade

_____
JOE BILLY McDADE
United States District Judge